NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUNO LOPEZ,<br><br>       Plaintiff,<br><br>  v.<br><br>JOSEPH ROSCIO, MARISIA ROSCIO, and BARR CONSTRUCTION,<br><br>       Defendants,<br><br>―――――――――――――――<br><br>JOSEPH ROSCIO and MARISIA ROSCIO,<br><br>       Defendants/Third-Party Plaintiffs,<br><br>  v.<br><br>BARR CONSTRUCTION,<br><br>       Defendant/Third-Party Defendant/Third-Party Plaintiff,<br><br>  v.<br><br>F. GREGORIO ELECTRICAL and ALL-CLIMATE AIR CONDITIONING & HEATING,<br><br>       Third-Party Defendants. | CIVIL ACTION NO. 03-1770 (DRD)<br><br>OPINION |

<u>Appearances</u>

Mira Lukovic Mullins, Esq.
LAW OFFICES OF MIRA LUKOVIC MULLINS
1 Newark Street
Suite 28
Hoboken, NJ 07030

Kevin Concagh, Esq.
KEVIN CONCAGH, P.C.
225 Broadway
New York, NY 10007

    *Attorneys for Plaintiff Bruno Lopez*

William P. Cunningham, Esq.
LAW OFFICES OF JUDITH A. HEIM
12 Vreeland Road
P.O. Box 975
Florham Park, NJ 07932

    *Attorney for Defendants Joseph Roscio and Marisia Roscio*

Brigid Hagerty Farley, Esq.
Deidre M. Dennis, Esq.
LAW OFFICES OF BRIGID HAGERTY FARLEY
100 Eagle Rock Avenue
East Hanover, NJ 07936

    *Attorneys for Defendant/Third-Party Defendant/Third-Party Plaintiff Barr Construction*

Robert F. Colquhoun, Esq.
COLQUHOUN & COLQUHOUN, PC
165 South Street
Morristown, NJ 07960

    *Attorney for Third-Party Defendant F. Gregorio Electrical*

Frank. J Kunzier, Esq.
John Andrew Fearns, Esq.
FRANK J. KUNZIER
6 Campus Drive
Parsippany, NJ 07054

    *Attorneys for Third-Party Defendant All-Climate Air Conditioning & Heating*

## *OPINION*

### **DEBEVOISE, Senior District Judge**

At issue in the present case is the liability of the homeowner, general contractor and subcontractors with respect to injuries received by an employee while working on renovations at a private residence. On August 8, 2002, Plaintiff, Bruno Lopez ("Plaintiff or Lopez"), was an assistant plumber working in the crawlspace at the home of Joseph and Marisia Roscio (collectively "the Roscios"). Plaintiff was the employee of Fischer Plumbing ("Fisher"), a subcontractor working under the supervision of general contractor Barr Construction, Inc. ("Barr"). Plaintiff was electrocuted by exposed wires hanging in the crawlspace and suffered serious injuries. The wires were originally exposed during a 1995 renovation project involving the removal of a furnace. The 1995 project was also supervised by Barr. After the furnace was removed by subcontractor (third-party defendant) All Climate Heat & Air Conditioning ("AC"), the wires that supplied power to the furnace were not sealed off properly. The wires remained exposed until the 2002 accident involving Plaintiff. Plaintiff is suing the Roscios and Barr for negligence which resulted in his injuries. Barr has impleaded third-party defendants AC and Gregorio Electrical ("Gregorio"), because it is unclear which of them actually disconnected the furnace from the electrical supply before AC removed the furnace.

Presently before the court are the separate motions of the Roscios and Barr, for summary judgment dismissing all claims against them. Additionally, Plaintiff has cross-moved for summary judgment against Barr. For the reasons set forth below, the Roscios' motion for summary judgment will be granted, Barr's motion for summary judgment will be denied, and Plaintiff's cross-motion for summary judgment will be denied.

## *FACTS/ PROCEDURAL HISTORY*

Plaintiff seeks damages for personal injuries he received on August 8, 2002. On that date, Plaintiff was an assistant plumber working in a crawlspace at the Roscios' home. Plaintiff was the employee of a subcontractor, Fischer, which had been hired to assist in a renovation of the Roscios' home. Fischer was retained to perform work at the Roscio home by the general contractor, Barr. While Plaintiff was in the crawlspace he inadvertently came into contact with exposed electrical wires, which were hanging above him, and was electrocuted. Plaintiff received numerous burns, broken bones, and other serious injuries as a result of the electrocution. An investigation into the accident by several experts revealed that the exposed wiring at the Roscios' residence appeared to be the result of a prior renovation project and furnace removal performed in 1995. After the furnace was removed in 1995, the electrical wires previously powering the furnace were not properly sealed off. The wires were left exposed until the Plaintiff accidentally came into contact with them during a subsequent renovation in 2002.

On January 30, 2004, Plaintiff filed an Amended Complaint with this Court. In his Amended Complaint, Plaintiff alleges that the Roscios knew or should have known of the dangerous condition. Plaintiff alleges that the Roscios were responsible for him working in an unsafe environment and failed to warn him and/or provide him with proper safety gear. In addition to the claim against the Roscios, Plaintiff filed a claim against Barr, the general contractor that supervised the renovation projects performed on the Roscios' residence in 1995 and 2002. Plaintiff alleges that Barr created a dangerous, hazardous and illegal condition in the Roscios' residence during the earlier renovation and failed to warn Plaintiff or provide him with a safe environment in which to work. Plaintiff alleges that Barr's negligence ultimately resulted

in his serious and severe personal injuries during the 2002 renovation.

Barr has impleaded third-party defendants AC and Gregorio. AC was a subcontractor in charge of removing the furnace in 1995. The furnace was connected to the exposed wires that injured Plaintiff in 2002. Gregorio was a subcontractor that performed some of the electrical work on the Roscios' residence during the 1995 renovation. While Jason McCleaver ("McCleaver") the owner of AC acknowledges that he removed the furnace in 1995, the question of who actually disconnected the furnace from the power supply is a matter in dispute. There were several proposals for the furnace removal exchanged between Barr and AC. On the original proposal, AC was responsible for performing all electrical work associated with the furnace removal. However, a later proposal has this provision lined-out and states "no elec[.] done by other." While Barr claims AC was responsible for performing the disconnect, AC argues that Barr was responsible for having this done and probably had Gregorio perform the disconnection.

## CONTESTED AND UNCONTESTED FACTS

<u>The 1995 Renovation</u>

The Roscios' residence is a split-level structure. The west end of the house is located over a three-foot high crawl space. In 1995, the Roscios hired Barr to construct a substantial (18 feet x 35 feet) addition to their home. A full basement was constructed under the new addition. A significant element of the 1995 project was a change in the heating system. The original heating system consisted of a furnace located in the crawl space. When the addition was added the old furnace was eliminated in favor of two new furnaces, which were installed in the new

basement. The old furnace was removed from the crawlspace by AC.

The 1995 project was supervised by Barr. Although the Roscios paid for the services, either through Barr or directly to the various subcontractors, they did not know with specific detail when the various portions of the renovation would take place. Barr hired all of the subcontractors for the 1995 project and was responsible for inspecting their work. Richard VandeWeert, Sr. ("VandeWeert") is the owner and principal of Barr Construction. VandeWeert did not personally witness the removal of the furnace, so he is unsure who actually disconnected it from the power source. Barr did not specifically direct anyone to disconnect the furnace from the electrical service since this was not an itemized piece of work. Mr. VandeWeert inspected all of the work performed on the 1995 project, including the crawl space, to make sure it was "done correctly and finished up;" however, he is unsure if he inspected the junction box, which contained the exposed wires. Barr failed to obtain the proper building permit for the furnace removal from the local building inspector. This error was discovered and a permit was obtained after Plaintiff's 2002 accident.

Jason McCleaver ("McCleaver") is the owner and principal of AC. McCleaver was in charge of removing the furnace from the Roscios' residence in 1995. In order to remove the furnace from the crawlspace, the furnace needed to be disconnected from the electrical wires supplying power to the furnace. While McCleaver claims that he did not perform the electrical work when he removed the furnace in 1995, he cannot recall who actually performed this work. McCleaver acknowledges that electrical work is an integral part of the heating and air conditioning business and he has performed electrical work associated with furnace removal on numerous other projects. However, McCleaver is certain that he did not perform the electrical

6

work on the 1995 furnace removal. VandeWeert disputes this assertion.

The Roscios went over the renovation plans for the 1995 project with Barr and the subcontractors prior to the renovation taking place. The Roscios paid for the work being done on their home. However, they did not supervise the work of the subcontractors. This was Barr's responsibility. The Roscios knew that the furnace was being replaced. However, there is no evidence that either of the Roscios knew of the electrical work associated with the furnace removal. There is also no evidence that either of them ever saw or even knew of the existence of the junction box which contained the exposed wires.

The Roscios, in addition to being homeowners, conducted a telephone installation and repair business called JMR communications ("JMR") out of their home. JMR employed approximately six full time employees that would report to the Roscio home on a daily basis. After the 1995 renovation, Mr. Roscio stored some of his business supplies in the crawlspace without incident. Although he sometimes went into the crawlspace, Mr. Roscio never observed the junction box or the exposed wires.

The 2002 Renovation

Additional renovations were performed on the Roscios' home in 2002. These renovations included the addition of a bathroom with handicapped access due to an illnesses suffered by Mr. Roscio (he has since died). Barr was again hired as the general contractor for the 2002 renovation. Barr hired Fischer as a subcontractor to perform the plumbing associated with the renovation. On the date of the accident, Plaintiff was employed as an assistant plumber for Fischer and was cutting and hanging pipes in the crawlspace which would be connected to the

7


new bathroom.

VandeWeert found out that the plumbers needed to go into the crawlspace on the date of the incident. The Roscios did not know that anyone would be in the crawlspace. Additionally, although VandeWeert inspected all areas of the home where he believed work was to be done, he did not inspect the crawlspace to ensure it was safe prior to Plaintiff entering the crawlspace. Plaintiff was trained to examine his working environment for danger, including electrical dangers. When he first entered the crawlspace, he noticed various wires hanging down and was told by his employer to "be careful." Plaintiff looked at the wires, and believed that they were covered so he continued. Plaintiff did not perform a close inspection of the wires. As Plaintiff was working in the crawlspace, he was electrocuted and suffered the serious injuries previously described.

Upon hearing a loud noise, Plaintiff's supervisor, who was working in another area of the house, ran to the crawlspace to check on Plaintiff. Plaintiff was discovered unconscious in the crawlspace. Plaintiff's supervisor then summoned the Roscios' son, and he called an ambulance. Plaintiff was evacuated to a nearby hospital for treatment.

Shortly after the incident, an OSHA representative arrived at the Roscios' house and preformed an investigation. He determined that Plaintiff came into contact with a live electrical conductor that was exposed in an open junction box hanging from the wooden header beam inside the crawlspace. Subsequent expert investigations all agree that the exposed junction box was most likely caused by the failure to seal off and cover the electrical connection following the 1995 furnace removal.

## DISCUSSION

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Rule 56(c) imposes a burden on the moving party simply to point out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met this burden, the burden then shifts to the non-moving party. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Moreover, the nonmoving party may not simply "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Rather, he must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. at 247. In determining whether there exists a material issue of disputed fact, however, the facts and the inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

In this case, the Roscios, and Barr have each moved for summary judgment dismissing

the counts against them. Additionally, Plaintiff has cross-moved for summary judgment of liability against Barr.

I.      The Roscios' Summary Judgment Motion

The Roscios have moved for summary judgment dismissing all claims against them. They argue that the uncontested facts of the case do not support Plaintiff's contention that the Roscios breached their duty to the subcontractors performing the work on their home. There is no evidence showing that the Roscios knew or should have known of the dangerous condition in their home that caused Plaintiff's injuries. Additionally, there is no evidence showing that the Roscios interfered or involved themselves in the renovation project in a manner that contributed to Plaintiff's injuries. In the absence of knowledge of the dangerous condition or interference on their part, the Roscios argue, they did not owe Plaintiff a duty to protect him from the exposed junction box and wires which electrocuted him.

"The owner of land who invites workmen of an independent contractor to come upon his premises is under a duty to exercise ordinary care to render reasonably safe the areas in which he might reasonably expect them to be working." Sanna v. National Sponge Co., 209 N.J.Super. 60, 66 (App. Div. 1986). However, "ordinarily where a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance, he is not liable for the negligent acts of the contractor in the performance of the contract." Majestic Realty Associates, Inc. v. Toti Contracting Co., 30 N.J. 425, 430-431 (1959). The test of liability is whether, under the particular circumstances, the injury ought reasonably to have been anticipated. Hardman v. Ford Motor Co., 70 N.J.Super. 275, 285 (App. Div. 1962).

The Supreme Court of New Jersey has held that "general negligence principles, rather than strict categorical analysis, govern tort claims involving worker safety issues." Alloway v. Bradlees, Inc., 157 N.J. 221, 235 (1999). "A major consideration in the determination of the existence of a duty under general negligence principles is the foreseeability of the risk of injury." Id. at 230. In addition, "the determination of such a duty involves identifying, weighing, and balancing several factors - the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. The analysis leading to the imposition of a duty of reasonable care is 'both fact-specific and principled,' and must satisfy an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Id. None of these factors suggest that the Roscios should be held liable for Plaintiff's injuries.

In Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 320-321 (App. Div. 1996), the Court reaffirmed the longstanding rule favoring the general contractor as the entity primarily responsible for the safety of all employees on the job. In doing so the Court also declined to extend liability to the landowner, upon whom OSHA imposes no affirmative duties. Id. Although a landowner has a nondelegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers, the duty to provide a reasonably safe place to work is relative to the nature of the invited endeavor. See Rigatti v. Reddy, 318 N.J.Super. 537, 542 (App. Div.1999)(citations omitted). The duty does not entail the elimination of operational hazards that are obvious and visible to the invitee upon ordinary observation and are part of or incidental to the very work the contractor was hired to perform. Id. The landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of

11

danger involved and to adjust their methods of work accordingly.  Id. (citing Wolczak v. Nat'l Elec. Prods. Corp., 66 N.J.Super. 64, 75 (App.Div.1961)).  However, a landowner will not escape liability if the landowner retains control "over the manner and means by which the work is to be performed, [or] where the work constitutes a nuisance *per se* or where one knowingly engages an incompetent contractor."  Cassano v. Aschoff, 226 N.J. Super. 110, 113 (App. Div. 1988).

In Dawson, the Court granted summary judgment in favor of the landowner where the general contractor had the sole responsibility for work site safety, was on the site every day overseeing and supervising the construction, hired and paid all the subcontractors on the project, and ordered and paid for all the project equipment.  289 N.J.Super. at 319.  The Court held that "Bunker Hill, as landowner, plainly did not owe a duty to plaintiffs, as employees of an independent contractor, to prevent injury from a risk which was incident to the very task they were hired to perform, and therefore is not liable to plaintiffs for the injuries they sustained in this accident."  Id.  Other cases have imposed a duty on the landowner where the dangerous condition causing the injury was known by the landowner to have preexisted or was reasonably foreseeable due to weather or other environmental conditions.  See Pfenninger v. Hunterdon Central Regional High School, 338 N.J. Super. 572, 581-83 (App. Div. 1999).  However, the duty imposed on the landowner in those cases simply does not apply to the case at bar.

In the present case, there is no evidence that the landowners either purposely or negligently caused the dangerous condition (All of the experts agree that either Barr, AC, or Gregorio was responsible for leaving the wires exposed after the 1995 furnace removal).  Neither is there evidence showing that the Roscios knew or should have known of the exposed wires or of the presence of the junction box at all.  Additionally, there is no evidence showing that the

12

Roscios knowingly engaged an incompetent contractor or that they retained control over the manner and means by which the work was to be performed. To the contrary, the evidence has shown that the existence of the junction box was known by no more than three entities: AC, Barr, and possibly Gregorio.

As the landowners, the Roscios hired professionals to perform the 1995 renovation and expected this job to be performed in a professional manner. Apparently this did not happen. Although Barr was the general contractor on the 1995 project, and Mr. VandeWeert was responsible for inspecting the work of his subcontractors, it appears this inspection was not performed properly. The result of this faulty inspection was the failure to seal off the exposed junction box and the dangerous condition that was encountered by Plaintiff seven years later. Barr was placed in control of the 2002 renovation and retained control over all of the daily operations. Prior to the start of the 2002 renovation, it was Barr's responsibility as general contractor to make sure that the area would be safe for Plaintiff to work in. Additionally, Plaintiff was trained to look for electrical wires when he was working in crawlspaces and was at least somewhat aware of the inherent dangers in working in crawlspaces. The Roscios cannot be held liable for failing to protect the Plaintiff from a condition on their property of which they reasonably had no knowledge, and that existed because of the negligence of the contractor and/or subcontractors it hired. Thus, despite Plaintiff's claims to the contrary, the exercise of due care would not and did not cause the Roscios to know about the dangerous condition on their property and the need to protect Plaintiff from it. Plaintiff's additional argument that Mr. Roscio should have known about the exposed wires because he worked out of his home and stored some books and work supplies in the crawlspace is unsupported. There is no evidence showing that Mr.

13

Roscio traveled deep enough into the crawlspace to become aware of the wires, and the positioning of the junction box would have concealed it from the crawlspace entrance. Accordingly, summary judgment will be entered dismissing Plaintiff's claims against the Roscios.

II.     Barr's Summary Judgment Motion and Plaintiff's Cross-motion

Barr has moved for summary judgment dismissing all claims against it. Barr contends that because either AC or Gregorio removed the furnace in 1995 and left the junction box exposed they should be held responsible. Barr argues that it did not know of the dangerous condition created by the furnace removal, and it cannot be held vicariously liable for the negligence of AC or Gregorio. Additionally, Barr argues that Plaintiff has made no prima facie showing of negligence on its part. Plaintiff has cross-moved for summary judgment against Barr because Barr had a duty to provide Plaintiff with a safe place to work and was responsible for compliance with OSHA regulations.

Using the process for determining duty as explained in Alloway, the court must identify, weigh, and balance several factors in determining whether Barr had a duty to Plaintiff: "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." 157 N.J. at 230. In Alloway, the Court overturned the earlier entry of summary of judgment against Plaintiff where it appeared that the general contractor and/or subcontractor had violated the OSHA standard of care. The Court noted that the only duty imposed upon a general contractor who has hired an independent

14

subcontractor is to ensure that the premises on which the subcontractor performs its work are in a reasonably safe condition. Id. (citing O'Keefe v. Sprout-Bauer, Inc., 970 F.2d 1244, 1251 (3d Cir. 1992)). Although a general contractor must provide a reasonably safe workplace, it is not required to eliminate all the potential hazards of the job performed by the subcontractor. Id. Additionally, violation of OSHA regulations does not constitute negligence per se; however, OSHA regulations are pertinent in determining the nature and extent of any duty of care, and proof of a deviation from a statutory standard of conduct is nevertheless a relevant circumstance to be considered by the trier of fact in asserting tort liability. Id. at 236 (citing J.S. v. R.T.H., 155 N.J. 330, 349 (1998) and Bortz v. Rammel, 151 N.J. Super. 312, 320 (App. Div. 1977)).

In the present case, when considering the admission of Mr. VandeWeert, it appears that Barr may not have performed its duty to thoroughly inspect the work of its subcontractors (AC or Gregorio) either after the furnace removal in 1995 or before the work commenced in 2002. This was coupled with the violation of an ordinance by not obtaining a permit to remove the furnace at the time of the 1995 project. Retention of a permit would have required a building inspector to inspect the electrical work. While violation of a statute is not conclusive, it is indicative of the standard of due care owed to Plaintiff, the employee of Barr's subcontractor. It also appears that Barr was given another opportunity to prevent disaster before the 2002 renovation began. As admitted by Mr. VandeWeert, Barr was responsible for inspecting the area and making sure its subcontractors were working in a safe place before Plaintiff entered the crawlspace.

It will be up to the finder of fact to determine whether these inspections were conducted in a manner within the acceptable standards of practice, and whether or not any failure on Barr's part was the proximate cause of the undiscovered exposed junction box and of Plaintiff's

injuries. It is certainly conceivable that Barr had a duty to thoroughly inspect the work of its subcontractors and may have failed to meet that duty. Additionally, it is unclear which subcontractor (AC and/or Gregorio) was responsible for performing the electrical work associated with the furnace removal from the facts given at the various depositions. This is another issue for the finder of fact to decide. Bar, AC, and/or Gregorio may all share a portion of the liability; however, there are certain factual issues which must be determined by the jury before a judgment regarding liability against any of these parties is entered. Causation and comparative liability amongst these defendants must be flushed out at trial. Summary judgment either for or against Barr is not appropriate.

## *CONCLUSION*

For all the reasons stated above, the Roscios' motion for summary judgment will be granted, Barr's motion for summary judgment will be denied, and Plaintiff's cross-motion for summary judgment against Barr will be denied. An appropriate order will be issued.

      /s/ Dickinson R. Debevoise
      Dickinson R. Debevoise, U.S.S.D.J.

February 8, 2006